UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONNA LAUGHLIN,

        Plaintiff,

-vs-                                                  Case No. 5:05-cv-342-Oc-10GRJ

PILOT TRAVEL CENTERS, LLC,

        Defendant.
_____

## **O R D E R**

In this employment discrimination action, the Plaintiff contends that during her employment with the Defendant, she was subject to a hostile work environment based on alleged sexual harassment by a co-worker, and that she was constructively discharged, all in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.*, ("FCRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII").

The Defendant has filed a Motion for Partial Summary Judgment (Doc. 32), seeking judgment in its favor as to the Plaintiff's constructive discharge claim and her request for punitive damages for all claims. In its Motion, the Defendant argues that the Plaintiff was not constructively discharged; rather, she resigned her employment due to a disabling back condition which prevented her from performing her job duties. The Defendant further argues that punitive damages are not recoverable because: (1) neither the co-worker who allegedly harassed the Plaintiff, nor the supervisor to whom the Plaintiff complained were

high enough in the corporate hierarchy to be representatives of the corporation for purposes of a punitive damages assessment; (2) the Plaintiff never complained to anyone in higher management; and (3) there is no evidence that higher management countenanced or approved the alleged harassment.  The Plaintiff has not filed a response in opposition to the Motion, and the time for responding has elapsed.[1]

For the reasons that follow, the Court finds that the Defendant's Motion for Partial Summary Judgment is due to be granted.

## **BACKGROUND**

The following is a recitation of the facts in the light most favorable to the non-moving party, the Plaintiff.

**A.    The Parties**

The Defendant, Pilot Travel Centers, LLC ("Pilot Travel"), is the nation's largest operator of travel centers, with approximately 266 locations in 39 states, and approximately 13,000 employees.  The Plaintiff, Donna Laughlin, is a resident of Dunnellon, Florida.  She was employed by Pilot Travel as a maintenance worker at Pilot Travel's store in Marion

---

[1]On November 29, 2006, the Plaintiff filed a motion for leave to file a response and memorandum in opposition in excess of twenty-five pages in length (Doc. 37).  Contemporaneous with that motion, and in violation of Rule 3.01(d) of the Local Rules of the Middle District of Florida, the Plaintiff also filed her response (Doc. 38).  The response was eighty-four (84) pages in length. The Magistrate Judge denied the Plaintiff's motion (Doc. 41), and provided the Plaintiff until December 6, 2006 to file a response in opposition of no more than thirty (30) pages in length.  The Magistrate Judge also ordered that various documents the Plaintiff attempted to have filed under seal in support of her response be returned to the Plaintiff.  As of the date of this Order, the Plaintiff has not filed any response to the Defendant's Motion for Partial Summary Judgment.

County, Florida from October 24, 2002 until she abandoned her job on February 18, 2004. Her immediate supervisor was Peggy Wolford, the store General Manager, and her next level supervisor was Matt Pytosh, Regional Manager.

At all relevant times, Pilot Travel had in place an anti-discrimination and harassment policy and Open Door Procedure.[2]  Both policies provide a complaint procedure through which employees who believe they have been a victim of discrimination or harassment can report such conduct.  An employee is first directed to complain to his or her General Manager.  If the employee feels that the General Manager cannot or will not resolve the situation, the employee is directed to contact his or her regional manager, Human Resources manager, Division Director or Vice President for Operations, in that order.  At any time, an employee can bypass this complaint procedure and call a toll-free Alert Line number or the appropriate Division Human Resources Manager.

The anti-discrimination and harassment policy and Open Door Procedure were contained in Pilot Travel's employee handbook. Laughlin received a copy of the handbook at the time she was hired.[3] She received an updated version of the handbook, which contained the same policy and procedure, in July 2003.[4]  In August 2003, Laughlin received, reviewed, and signed two additional documents entitled "Harassment of Team

---

[2] Deposition of Donna Laughlin, ("Laughlin Dep."), Ex. 3, pp. 9, 18.

[3] Laughlin Dep., 49-50.

[4] Id., pp. 51-52, Ex. 4.

Members" and "Open Door Policy."[5]   Both documents again explained Pilot Travel's prohibition of workplace harassment, and the complaint procedure for reporting any harassing conduct.[6]

**B.   The Alleged Harassment**

Laughlin contends that beginning in December 2002 until November 2003, she was continuously subject to sexually harassing conduct by one of her co-workers, Bryan Dumont. Dumont was also a maintenance worker, who occasionally worked the same shift or overlapped shifts with Laughlin.  The harassment consisted of various lewd and vulgar comments of a sexual nature, sexual propositions, comments about Laughlin's anatomy, and various touchings.[7] In particular, Laughlin contends that Dumont grabbed her breasts and buttocks "about once a week."[8]

Laughlin repeatedly complained about Dumont's conduct to the General Manager, Peggy Wolford.[9]   Accordingly to Laughlin, Wolford ignored and laughed off Laughlin's

---

[5] Id., pp. 173, 175.

[6] Id., Ex. 19.  The only differences in this separate document is that it permits employees the option of complaining to their General Manager, Regional Manager, or Division Director, deletes any reference to a toll-free Alert Line, and permits employees to complain directly to the appropriate Human Resources Manager.

[7] See, e.g. Laughlin Dep., pp. 136-39, 144, 146-47, 162

[8] Id., pp. 164-65.

[9] Id., pp. 140-44, 157.

4

complaints.[10] In February and March of 2003, Laughlin also complained about Dumont to other lower-level supervisors, who also took no action.[11] At no time did Laughlin ever complain to any managerial employee above Wolford, nor did she utilize the Open Door Procedure.[12] However, Laughlin testified that in August 2003 she told Wolford that if something was not done about Dumont's behavior she would complain to her regional manager, Matt Pytosh. Wolford responded by threatening to fire Laughlin if she complained to Pytosh.[13]

In March 2003, Wolford promoted Laughlin to the position of lead maintenance worker.[14] In this position, Laughlin had some supervisory authority over other maintenance workers, including Dumont.[15] However, Laughlin did not have authority to discipline or terminate any employees.[16]

In October 2003, Dumont pinned Laughlin against a wall, grabbed her crotch, tried to kiss her, and told Laughlin in a very crude manner that he wanted to engage in various

---

[10] Id., pp. 141-42.

[11] Id., pp. 147-48, 154-55, 158-59, 200-202. These supervisors were all subordinates to Peggy Wolford.

[12] Id., pp. 158, 169-73, 175

[13] Id., pp. 166-67, 175-76.

[14] Id., p. 58; Deposition of Peggy Wolford ("Wolford Dep."), p. 66.

[15] Laughlin Dep., pp. 59-60.

[16] Id.

sexual acts with her.[17]  Laughlin managed to escape and immediately complained to Wolford.  Laughlin also stated that if Wolford did not take action, Laughlin would be forced to hit Dumont the next time he accosted her.  Wolford responded by stating that if Laughlin hit Dumont, Laughlin would be fired.[18]

One of Wolford's subordinates, an assistant manager named Julie Namack, was present during Laughlin's conversation with Wolford.[19]  Namack convinced Wolford that disciplinary action against Dumont was necessary.  Wolford agreed and met with Dumont on October 21, 2003.[20]  During the meeting, Wolford explained to Dumont that a complaint of sexual harassment had been made against him and that if Wolford received any further complaints, he would be immediately terminated.[21]  Wolford also gave Dumont a written disciplinary warning.[22]

---

[17] Id., pp. 66-68.

[18] Id., p. 156.

[19] Id., pp. 150-151.

[20] Deposition of Bryan Dumont ("Dumont Dep."), pp. 143-44; Wolford Dep., p. 196; Laughlin Dep., p. 150.

[21] Wolford Dep., p. 199; Dumont Dep., pp. 147-48, 150-51.

[22] Dumont Dep., Ex. 8.

Laughlin contends that the harassment stopped for a short period of time, but that in early November 2003 Dumont again grabbed Laughlin's buttocks and again Wolford took no action after Laughlin complained.[23]

## C.  Laughlin's Resignation

At some point in November 2003 Laughlin told Wolford that she was experiencing severe back pain for which she was under a doctor's care, and that she could no longer perform her maintenance duties.[24]  Laughlin requested a medical leave of absence under the Family and Medical Leave Act, ("FMLA"), which was granted on November 26, 2003.[25]

Laughlin's FMLA leave expired on February 18, 2004.  However, Laughlin never returned to work and never contacted Wolford or anyone else at Pilot Travel about returning to work.[26]  At her deposition, Laughlin testified that she could not return to work because of her back pain, which prevented her from performing her job duties.[27]  On March 31, 2004, Laughlin filed an application for Social Security Disability Insurance Benefits.  In

---

[23]Laughlin Dep., pp. 163-64.

[24]Laughlin Dep., pp. 73-74.

[25]Id., pp. 73, 77-78, Ex. 6.  At her deposition, Laughlin testified that she took the medical leave of absence because of her back pain and because of Dumont's constant harassment.  Id., p. 73. Laughlin admitted, however, that she only applied for FMLA leave on the basis of her back pain, and that she never mentioned to anyone at Pilot Travel that she was requesting leave because of Dumont.  Id., pp. 73-75.  Laughlin further admitted that she never sought any psychiatric or other medical treatment for any emotional or mental distress caused by the alleged harassment.  Id., pp. 107-111, 115.

[26]Laughlin Dep., pp. 78-79.

[27]Id., pp. 79-80.

her application, Laughlin stated that she "became unable to work because of my disabling condition on October 31, 2003." She further stated that her "disabling condition" was severe lower back pain.[28]

## D.   Procedural History

On January 21, 2004, while Laughlin was on FMLA leave, she filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR"). The charge asserted that Laughlin had been subject to hostile work environment sexual harassment by her co-worker Dumont.[29] Laughlin filed a second charge on February 26, 2004, repeating the same allegations.[30] On April 1, 2004, Laughlin filed a supplemental charge of discrimination with both agencies asserting that she had been subject to hostile work environment sexual harassment by her co-worker Dumont, and that she was constructively discharged.[31] Laughlin filed yet another dual charge alleging both hostile work environment and constructive discharge on May 8, 2004.[32]

---

[28]See Application for Disability Insurance Benefits, dated March 31, 2004 (Doc. 42-18).

[29]Laughlin Dep., Ex. 7.

[30]Id., Ex. 9.

[31]Id., Ex. 11.

[32]Id., Ex. 15.

8

The EEOC issued two dismissal and notice of right to sue letters on December 8, 2004.[33] Both documents stated that the EEOC was "unable to conclude that the information obtained establishes violations of the statutes."[34] Laughlin then filed her timely Complaint in the Fifth Judicial Circuit in and for Marion County, Florida on March 3, 2005 (Doc. 2). Her Complaint contains three claims for relief: a claim of hostile work environment sexual harassment under Title VII and the FCRA (Counts I and II), and a claim of constructive discharge under Title VII (Count III).  Pilot Travel removed this case to this Court on July 29, 2005 (Doc. 1), and moved for partial summary judgment on October 31, 2006 (Doc. 32).

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of

---

[33] See Complaint (Doc. 2), Exs. A, B.

[34] Id.

9

establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## DISCUSSION

Pilot Travel has not challenged Laughlin's hostile work environment claims at this stage. Pilot Travel instead argues that Laughlin's constructive discharge claim and request for punitive damages cannot go forward as a matter of law. The Court will address each argument in turn.

### A.     Constructive Discharge Claim

Count III of Laughlin's Complaint alleges a claim of constructive discharge under Title VII. More specifically, she contends that she was compelled to resign in February 2004, based on the harassment she suffered at the hands of Dumont.

The Eleventh Circuit has recognized that "when an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which she is subjected because of race, color, religion, sex, or national origin, the employer committed a constructive discharge in violation of Title VII." Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (internal citations omitted). In evaluating constructive discharge claims, a

plaintiff's subjective feelings are irrelevant. Instead, the Eleventh Circuit employees an objective standard. Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208, 1231 (11th Cir. 2001). The Court has stated that "[t]o successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were so intolerable that a reasonable person in [her] would have been compelled to resign." Id. (internal citations omitted). To meet this burden, the plaintiff "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Id. (internal citations omitted). Laughlin has not met this burden in her case.

Although Laughlin contends that she resigned in order to avoid any further harassment by Dumont, her deposition testimony clearly establishes that the real reason she did not return to work was because of her back condition. Laughlin requested a medical leave of absence in November 2003 solely because she could no longer perform her job due to her back pain. She took FMLA leave for that same reason. And, Laughlin admits that after her FMLA leave expired - several months after the last alleged incident of harassment - she did not return to work because she was "still having problems with my back, so I didn't feel like I could really do the job."[35] At no time did Laughlin mention to anyone that she was taking a leave of absence, and/or resigning, because of Dumont, and she has presented no evidence to establish this critical fact.[36] In fact, the first time Laughlin

---

[35]Laughlin Dep., pp. 78-79; 80, 204-205.

[36]The fact that Laughlin submitted an application for Social Security Disability Insurance
(continued...)

11

mentioned Dumont as the reason for her resignation was in her third amended EEOC charge, filed in April 2004.

Thus it is undisputed that Laughlin resigned from Pilot Travel solely due to her physical ailments. She did not involuntarily resign "in order to escape intolerable and illegal employment requirements to which she [was] subjected because of race, color, religion, sex, or national origin." As such, Pilot Travel is entitled to summary judgment on this claim. See, e.g., Taylor v. Roche, 2006 WL 2613659, * 3 (11th Cir. Sep. 12, 2006) (affirming rejection of constructive discharge claim where the "real reason" for the discharge was the plaintiff's "extremely serious 20-year old injury," that the plaintiff admitted was causing him "excruciating" pain); Mitchell v. Pope, 189 Fed. Appx. 911, 915 (11th Cir. July 14, 2006) (rejecting constructive discharge claim where plaintiff resigned due to health problems, a dispute over leave time, and a concern that she would lose her insurance if terminated, not because of any alleged harassment).

## B. Punitive Damages

Pilot Travel also seeks summary judgment as to Laughlin's request for an award of punitive damages on her two remaining hostile work environment claims under Title VII and the FCRA. According to Pilot Travel, Laughlin is not entitled to punitive damages because

---

[36](...continued)
Benefits in March 2004, in which she swore that she was disabled and was unable to work due to her back condition, while not dispositive on the question of constructive discharge, further undercuts any claim by Laughlin that Dumont's alleged harassment was the real reason she could not return to work.

neither Dumont nor Wolford - the two alleged discriminators - possessed sufficient managerial authority to impute punitive damages liability to Pilot Travel itself.

In order for the issue of punitive damages to reach a jury in a Title VII case,[37] a plaintiff "must come forward with substantial evidence that the employer acted with actual malice or reckless indifference to [the plaintiff's] federally protected rights." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1280 (11th Cir. 2002).  See also Kolstad v. American Dental Ass'n, 527 U.S. 526, 535-39 (1999); 42 U.S.C. § 1981a.  Once a plaintiff meets this burden, which is typically established by proving the deliberate and wrongful acts of one or more managerial agents of the employer, the plaintiff must still prove that her employer should be held liable for those wrongful acts.  Kolstad, 527 U.S. at 539-40.

"Punitive damages will ordinarily not be assessed against employers with only constructive knowledge of the violations." Dudley v. Wal-Mart Stores, Inc., 166 F.3d 1317, 1323 (11th Cir. 1999).  Rather, to receive punitive damages, a plaintiff "must show either that the discriminating employee was high up the corporate hierarchy, or that higher management countenanced or approved his behavior."  Id. (internal citations and quotations omitted). In other words, "the employer must be proved to be at fault." Id. at 1323, n. 8.

---

[37] "Florida's Civil Rights Act is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law." Maniccia v. Brown, 171 F.3d 1364, 1368 n. 2 (11th Cir. 1999).  See also Fla. Stat. § 760.11(5).

In the present case, the two allegedly discriminating employees are Dumont - the alleged harrasser - and Wolford - the store manager and immediate supervisor who allegedly did not take timely and/or sufficient action to stop the harassment. As Laughlin's co-worker and ultimately subordinate, it cannot be argued that Dumont was "high up the corporate hierarchy." And, as the manager of one store out of approximately 266 locations nationwide who had no authority beyond her own store, it also cannot be disputed that Wolford was not a member of upper management. See Dudley, 166 F.3d at 1323 (store managers of one Wal-Mart store out of more than 2000 were not high enough up Wal-Mart's corporate hierarchy to allow their discriminatory acts to be the basis for punitive damages against the corporation).[38]

Laughlin also has not established that any member of higher management "countenanced or approved" Dumont's or Wolford's behavior. Dudley, 166 F.3d at 1323; see also Wilbur v. Correctional Services Corp., 393 F.3d 1192, 1205 (11th Cir. 2004). There is a complete lack of evidence that Laughlin ever complained to anyone who was part of Pilot Travel's higher management, or that Wolford consulted with anyone in higher management about Laughlin's complaints or Dumont's discipline. Instead, Laughlin admits that she only complained to Wolford, despite having received three copies of Pilot Travel's anti-harassment policy and complaint procedure. In short, no one in higher management

---

[38]Similarly, any lower-level members of management who were subordinate to Wolford also would not be sufficiently high up the corporate hierarchy to create liability.

14

was aware of Laughlin's situation, and thus could not have countenanced or approved of the alleged harassment.

Laughlin's contention that Wolford threatened her with termination if she complained to higher management - which arguably could be deemed "malicious" or "reckless" - also does not create liability for punitive damages because, as discussed above, Wolford was not a member of higher management, and because there is no evidence that anyone in higher management was aware of this alleged threat. In addition, the Supreme Court has held that employers may assert a good faith defense to vicarious liability for punitive damages where the "employment decisions of managerial agents . . . are contrary to the employer's 'good faith efforts to comply with Title VII.'" Kolstad, 527 U.S. at 545; see also Miller v. Kenworth of Dothan, Inc., 277 F.3d at 1279. In this case, Pilot Travel had a detailed and well-publicized procedure to prohibit and rectify any instances of sexual harassment which complied with the purposes of Title VII - a procedure which Laughlin admits receiving. The fact that Wolford may have threatened Laughlin with termination if she followed this procedure would clearly be a decision of a managerial agent which was contrary to Pilot Travel's good faith efforts to comply with Title VII. Thus, even taking Laughlin's unsubstantiated statement concerning Wolford's threat as true, it would not be

sufficient to create liability for punitive damages against Pilot Travel itself.[39] Pilot Travel is entitled to summary judgment on all of Laughlin's claims for punitive damages.

## **CONCLUSION**

Accordingly, upon due consideration it is hereby ORDERED and ADJUDGED that the Defendant Pilot Travel Center LLC's Motion for Partial Summary Judgment (Doc. 32) is GRANTED.  Pilot Travel Center is entitled to judgment in its favor on the Plaintiff's claim for constructive discharge (Count III) and on all claims for punitive damages.  The Clerk is directed to withhold entry of final judgment pending resolution of the remaining claims in this case.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 11th day of January, 2006.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[39] It is also worth noting that Laughlin's Complaint does not contain any allegations concerning this threat by Wolford, and that Laughlin has never contended that she was retaliated against in any way.